v. Thomas K. Bell, Warden Argument is not to exceed 15 minutes per side. Ms. Corbacus for the appellant. Good morning, Your Honors. Raina Corbacus from the Michigan Attorney General's Office on behalf of Appellant Thomas Bell, I'd like to reserve three minutes for rebuttal, please. Thank you. This is a case where the district court granted the extraordinary remedy of habeas relief on a procedurally defaulted FRERTA claim. The state asks this court to reverse the district court's decision for two reasons. First, the district court erred in finding that the petitioner overcame the procedural default. And second, that the trial court's denial of the petitioner's request to represent himself was not an unreasonable application of clearly established Supreme Court precedent. I'd like to start with the default issue, and the default that I'm referring to is petitioner's failure to raise his FRERTA claim on direct appeal. Petitioner makes a different default argument in his brief that I will address later, but the default that the state argued is an undisputed default, and the only question is whether petitioner has shown good cause and actual prejudice to overcome it. The petitioner here alleged that his appellate counsel was ineffective for not raising the claim, and the district court found that because the underlying claim had merit, the petitioner showed both cause and prejudice. But the district court in its analysis failed to acknowledge that there are actually two prejudice prongs at work, and that's the prejudice prong under Strickland, and that goes to the first part of the prejudice prong. Relating to his ineffective assistance of appellate counsel claim, and the separate and distinct actual prejudice prong, which goes to the second part of the cause and prejudice analysis. The state contends that petitioner hasn't shown either good cause or actual prejudice, let alone both. For reasons noted in our brief, petitioner hasn't shown that his appellate counsel was constitutionally ineffective under Strickland. That's a very difficult burden to meet, given the last-minute nature of his Ferretto request. Appellate counsel may have reasonably determined that the trial court was justified in denying it, and may have thought that raising the other claims that he raised on direct appeal would be a better strategy. But even if the petitioner could show ineffective assistance of appellate counsel, that only establishes the cause portion of the cause and prejudice requirement, not the actual prejudice part. And that's where district court here fundamentally erred, by not making a separate finding of actual prejudice, and instead... Are you distinguishing between the standards for prejudice of what you call Strickland prejudice, and what you call actual prejudice? There is a different standard, yes. How would you explicate that? Well, under Strickland prejudice, under the Strickland prejudice prong, the claim would have had to have been meritorious on appeal. Under the distinct actual prejudice prong, and this is what the court addressed in Ambrose, and the district court completely ignored Ambrose, is he has to show that the outcome of the proceeding would have been different. Had he represented himself, the outcome of the proceeding would have been different. And actual prejudice in the context of a default cannot be presumed, even in the case of structural error. And neither the district court nor petitioner acknowledged Ambrose, and petitioner has never even attempted to show actual prejudice in his case. And this alone... And is it that the outcome would have been different, or that there was a reasonable probability that it would have been different? That the outcome would have been different, and that's set forth in this court's opinion in Ambrose. And in this case, there's absolutely no evidence that, had he represented himself at trial, that the outcome would have been different. In fact, with the benefit of counsel, petitioner here was acquitted of a felony carjacking offense, and as an aside, his claims that trial counsel was not prepared are completely belied by the record. And these witnesses that petitioner claims should have been called, we don't even know that they would have testified on his behalf, that they would have provided favorable testimony. Even to this day, he's provided no affidavits from these people that he wanted called, that trial counsel failed to call. The district court's error in its default analysis and in presuming actual prejudice was critical, and its grant should be reversed on this basis alone. And this court, in the past, has not hesitated to reverse habeas grants when district courts have erred in procedural default analysis. And two cases are Stokes v. Scott, 527 FAPPX 358, and Williams v. Booker, 454 FAPPX 475. Now, the district court also erred in another respect, and that was in granting relief on the underlying Ferretta claim under 2254 D1. The district court seemed most troubled by the fact that the trial court's ruling was abbreviated, and that the trial court did not engage in a colloquy to address the request, which the district court found not untimely. There are a number of errors in the district court's opinion. First, the fact that the trial court's ruling was abbreviated is not problematic, and the U.S. Supreme Court has said that in Richter. Second, there's no Supreme Court precedent saying or holding the day of trial requests are timely, or that a Ferretta colloquy is required when such a last-minute request is made. May I stop you there to talk about the timelyness of a Ferretta request? Sure. You said there is no law that says the day of court request is timely. Yes. But is there one that says explicitly, or even impliedly, if you can tell me that, that a day of trial request is untimely? We know that Ferretta's holding has a timeliness component. Correct. But if it says whether well before versus day of trial, if there's a distinction there, please tell me. The court in Ferretta, in that case, the request came, and the court mentioned several times, it was weeks before trial, and well before the trial, the trial date. The Supreme Court has never spoken or indicated when a request would be untimely. There is no Supreme Court holding on that point. But yet, I think if I've understood you so far, you'd like us to find that the day of trial request is untimely. I'm asking the court to acknowledge the fact that there is no Supreme Court precedent on that point, and to the extent that the district court here found the request not untimely, there isn't any Supreme Court precedent on that point. And therefore, nothing, the district court couldn't have been reasonably applied it in that regard. The district court also... We don't have to find, it sounds like you're saying that we don't have to find it untimely, we just have to say there's no clearly established law. Correct. The judge may have actually, if this were a direct appeal, might have had it right. Right. And the Supreme Court has never held the day of trial requests can't be denied as untimely. And the district court, in granting habeas, never cited to any Supreme Court law, but instead primarily relied on this court's ruling and more. And even Petitioner, on page 23 of his brief, says that more is what requires the grant of habeas relief. But it's fundamental error to rely on circuit precedent as a basis to grant habeas relief. The Supreme Court has repeatedly cautioned lower courts against doing this, against granting habeas based on conflicts with circuit precedent, and has reversed a number of cases where habeas was granted on this basis. Counsel, as you know, we had a non-bonk argument in December in Hill v. Curtin. Do you have a view on, since we haven't decided it, we don't know which way it's gonna go, but that will that case, as far as the merits goes, likely decide this issue one way or the other? That is, can you address the effect if we affirm or reverse in Hill? Well, there are some differences between Hill and in this case. In Hill, there wasn't a default like there is in this case. I'm talking about the merits. The merits of the case. It could affect this case. I don't think that this court needs to wait until Hill comes out in order to decide this case. If it looks to clearly establish Supreme Court precedent, I think it could deny the district court's grant in this case, just based on that. Assuming he could even overcome the default first, because that's the first hurdle he has to pass. But I think that the panel in Hill made a very similar error to what the district court did in this case. I'm going to have to re-argue Hill. Right. We're going to, I'm saying, if we come out one way, does it result, does it affect this? If it comes out the other way, does it affect this? I think Hill could have an impact, but I think the court doesn't have to wait for a decision in Hill to decide this case. But it could definitely have an impact. Yes. Do you want to say anything about which way it would affect it, case A or case B, or you just want to leave it at that? Well, we would like Hill to come out with a finding that a colloquy, the Supreme Court has any clearly established Supreme Court precedent holding that, and that timeliness may be a basis for denying a FRERTA request. FRERTA and its progeny have indicated that the right to self-representation is not... If it comes out the other way, though, if it comes out in favor of the petitioner, the habeas petitioner, then do you have anything left other than the procedural default? The default would be the main distinction between that case and this one. The district court here also, I believe, took an all too narrow view of the record in concluding that timing wasn't a basis for the trial court's ruling. While the trial court's ruling was very abbreviated and did not expressly mention timing, it's very reasonable to infer that the denial was This isn't merely speculating. The request was made minutes before trial as trial was just about to begin. The trial court was well aware that jurors were waiting outside. Before a petitioner's request, the trial court had expressed concern about delays and further adjournments in this case, and the trial court was clearly concerned with moving the case forward, that there would be no delays. The district court said that there was no evidence of delay on this record, but I think it may easily be inferred otherwise. Petitioner never indicated that he was ready to proceed and go to trial at that moment, and his complaint had to do with trial counsel not calling certain witnesses, and that would have taken time. He never indicated that those witnesses were there, that they had even been called, or had any favorable testimony to give to him, so I think the record shows that the request would have resulted in a denial in this case, and I see my time is up. Thank you. Thank you, Counselor. You'll have your remaining time for rebuttal. Ben Snyder for Appalachia Gary Jones. The judge at Mr. Jones's trial denied him his fundamental right to represent himself because she didn't think he could handle it. That reasoning is clearly inconsistent with Ferretta, and the state has made no attempt to defend it. Instead, the state argues that because its courts could have set an earlier deadline for self-representation requests, and then could have denied Mr. Jones's motion on the basis of his failure to comply with it, Mr. Jones must remain in prison. That approach is also wrong. I don't understand why, this gets back to I think to your rules argument, I don't understand why the state would have had to have set a rule as to when a request is timely or not in order to address what happens on the morning of trial. Well, so to be clear, Your Honor, the state can and does have an open-ended rule. The state of Michigan has a rule that self-representation requests need to be made at a time early enough that it wouldn't delay the trial, and that in the Hill case, the Michigan Supreme Court ultimately held that under that standard, Mr. Hill's request was untimely. Our position is that Mr. Jones's I still don't get the rule. Where do I find that rule? So that rule is established under Michigan precedents. The Michigan courts have, under the exercise of their supervisory authority, established that a defendant who wants to represent himself must so move at a time sufficiently early that it wouldn't delay the trial, and different states have different rules. As the state notes in its brief, the state of Indiana, its courts have set a rule that morning of trial requests are per se untimely. The state of California has, again, an open-ended reasonable time before trial standard. In most jurisdictions, the rule is that so long as it's made before trial commences, the motion is timely. So in most jurisdictions, and we would say in Michigan, Mr. Jones's request would have been timely. Are we arguing this under the, quote, adequate and does Feretta make clearly established law? Feretta doesn't, you know, there's no indication that they would require a rule in order to make the timeliness assessment, do they? Well, so Martina says that most courts do, Martina says that most courts do require that a motion be made timely. So the suggestion there, again, is that the courts are establishing these rules, and to go to your question, the proper framework of analysis is the adequate independent state ground doctrine. The reason for that is that the Supreme Court has made absolutely clear in case after case that when you're looking to whether a claim was timely presented in the state courts, and that's not just state law claims, it's federal claims as well, you look to state law to decide whether it was timely asserted. Aren't you talking timeliness generally, not timeliness under Feretta? That is to say, if a state, the state of Guam is admitted and they have no precedents and no rules, can't the judge still make a Feretta statement that this is untimely, and unless Feretta clearly establishes that it is timely, then you lose under AEDPA and Feretta, not under adequate and independent state grounds. No, I don't think that's right, Your Honor. So the proper method of analysis would be under the adequate and independent state grounds doctrine, but to be clear, that doctrine is incredibly deferential to the states. I mean, the approach I'm suggesting is a very state-friendly approach, and the answer under that is that states are free to control procedure in their own courts. I mean, that's first year civil procedure under the Erie context, and the court has applied it criminal context as well. So to your Guam example, the courts in Guam would presumably have rules about the presentation of motions and evidence, and they could have an open-ended reasonableness requirement that would apply to all procedures in state court, and they could conclude that that rule also applies, or that precedent also applies to Feretta requests. But the court in, take Ford, for example. So in Batson, the court had said that a defendant who wants to push a claim of racial discrimination in the jury selection has to do so in a timely fashion, and five years later in Ford v. Georgia, the court said that it was, of course, clear that you should look to local rules for the law governing the timeliness of a constitutional claim. So that's another instance where it's a federal constitutional claim, but you look to state rules. In Ford, what had happened was that the state court looked to a state decision decided well after Ford's claim had been presented, and applied it retroactively. And so the court said that wasn't permissible, and it wasn't permissible because it didn't provide an adequate opportunity to present his claim. It wasn't firmly established at the time of trial. We cite a number of other cases in our The state responds and says, yeah, yeah, yeah, that's true for lots of rights, but it's not true for the self-representation right. The self-representation right is more like the right to compulsory process, and they cite to Taylor v. Illinois. I'd embrace that. In Taylor v. Illinois, again, the court says that the question is whether the Sixth Amendment bars a state from enforcing a state procedural rule. The rule there was Illinois Supreme Court Rule 413. Whether the Sixth a rule that required pretrial disclosure of witnesses. It wasn't that the Sixth Amendment itself imposed a timeliness requirement. It was that the Sixth Amendment presented at the outer margins a limit on what rules the states could apply. Counselor, if I understand you correctly, and I may not, but if I do, it appears that you're saying because the state of Michigan accepts day of trial requests for self-representation as timely, that Ferretta allows discretion as to what timeliness should not control. So there are two pieces of that. I do agree that Michigan accepts day of trial requests. I would also say that even if Michigan ordinarily wouldn't have allowed day of trial requests, the fact that the state court didn't enforce the time bar against Mr. Jones would allow his claim to proceed. You take that because it says you can't handle it, and you don't mean the court implied you can't handle it at this time. You just can't handle it. Well, I think that's right, and to the extent that the state says, well, you should add words to that, and what she meant was you can't handle it at this time, that would be an unreasonable application of Ferretta as well. Ferretta says that you can't require any level of competency. So to say that you can't do it at this time because you don't have time to prepare would just be a backdoor way of introducing a requirement that you study those very rules that you're not required to know. But to go back to Ferretta, the court has said again in Martinez that most courts require that a Ferretta claim be asserted in a timely fashion. The state wants to say, all right, well, timely must mean an absolute date. So Ferretta says several weeks before trial. Timely must be something, it's got to be at least a certain amount of time before trial, and that's a question of federal law. The better reading of Ferretta, and given Ford v. Georgia and Francis and Wainwright v. Sykes and all these cases we cite in our brief, the only permissible reading of Ferretta is that timely means timely under state rules of procedure. The thing that's so strange about the case's argument here, and it's unlike any other case that they cite in their brief, is that the state courts never said that his claim was untimely. So what the state is doing is it's coming in years after the fact and it's saying, yes, the trial judge denied it because she didn't think he could handle it, but there could have been a deadline, and the judge could have enforced that deadline, and therefore it's not unreasonable to deny his request. That's just not the point of deadlines. Thank you for noticing. You heard Appellant's counsel mention your use of more and how we're discouraged from using Sixth Circuit precedent. Do you have something better or different to argue in place of, or can you buttress more? Well, so I disagree with the state's premise that it's impermissible to rely on circuit precedent when you're deciding habeas cases. I absolutely grant that the court cannot look to a Sixth that a day of trial request is untimely, granting for a moment that that was a question of federal law. This panel couldn't look to that direct appeal decision to show that it was clearly established, but that's not what the Moore decision is doing. The Moore decision was an AEDPA case. It granted AEDPA relief, and it did so as to a mid-trial request in which the state had raised the claim that the request was untimely. And so in granting habeas relief in that circumstance, the Moore panel necessarily decided that Supreme Court precedent on this subject clearly foreclosed the state's timeliness argument. And if that's true, if the Supreme Court precedent clearly forecloses denial of a mid-trial request as untimely, then it has to also be true that Supreme Court precedent doesn't permit denial of an even earlier self-representation Counsel, do you have anything to say about the effect of Hill v. Curtin one way or the other? I do, and not surprisingly, your honor, I have a fairly pro-my-client view on that. If the court rules in favor of Hill, I think it would be very straightforward to say that the court should grant relief in this case as well. If the court rules for the state in Hill, I think there's still a large question remaining, which is what to do in a case like this one and unlike Hill, where the state courts have not enforced a time bar. So as you may know, Mr. Jones submitted an amicus brief in the Hill case, again arguing that the appropriate method of or the appropriate framework for inquiry was the adequate independent state grounds doctrine. But because the state courts had applied a time bar, the only question there is whether that time bar was adequate on the facts of Mr. Hill's case. And that's, I'll concede, a much harder inquiry. For Mr. Jones, the adequate independent state ground inquiry is incredibly easy. The state's never mentioned a time bar. They certainly didn't clearly mention a time bar, which this circuit's precedent requires, and therefore my client would prevail under that approach as well. If I could, the one distinction that the state drew between this case and the Hill case was the procedural default argument that the state acknowledges as a procedural default argument. And again, I think this court's precedent is very clear that there's no cause and prejudice requirement. The state is citing to Ambrose. Ambrose was a trial court case. Ambrose said that when you're dealing with a claim defaulted in the trial court, you look to whether the results in the trial court would have been different. The state says that Ambrose is somehow different from Strickland, but if you look at the Ambrose decision, it's very self-consciously drawing from Strickland. Near the end of that decision, it's citing to an 11th Circuit case. That 11th Circuit case was explicitly a case that embraced the Strickland standard. And I'll note, although it's not essential here, I'll note that the standard under Ambrose is whether there's a reasonable probability that the result of trial would have been different. That's straight from Ambrose. But more to the point, the Ambrose court is embracing the Strickland standard. And so the state's suggestion that Strickland is somehow not an actual prejudice standard finds no support in Ambrose. And in fact, this court's cases have gone the other way when dealing with claims that are defaulted on appellate review. So the Franklin v. Anderson case that they cite in their brief, it's the only case involving appellate ineffectiveness that they cite. They do so in their reply brief. Judge Boggs, that was an opinion that you wrote for the court. And the underlying constitutional issue there was a biased juror. That claim had been defaulted on appellate review, and the court had to decide whether the appellate ineffectiveness provided cause and prejudice to excuse the default. And the court did that by determining that, had the appellate attorney raised the issue, it would have resulted in a reversal. And the court found that that was, that's a 434 F. 3rd 428. The court found that that showing was sufficient to establish both cause and prejudice. The court didn't need to go through any inquiry about whether having an unbiased juror on the panel would have resulted in a different outcome. And given that there were 11 other unbiased jurors on the panel, presumably it wouldn't have been able to reach that conclusion. So we think the state's own case resolves against it. I just point to two other cases that I think make this really clear. One which is not cited in the briefs is the Morvey Mitchell case. That's at 708 F. 3rd 776. And again, that's a case where in the context of looking to appellate ineffectiveness to excuse a procedural default, the court just asks whether the result on appeal would have been different. Again, there's no inquiry into whether the trial would have come out differently. And then the McFarland v. Eukins case that we cite in our brief at 356 F. 3rd at 712 does the same thing. So I think this court's precedents make very clear that this cause and prejudice and prejudice standard that the state is advancing just isn't the law. What if we disagree with you on that and conclude that prejudice means something else when you get to the merits? What do you have for us that would indicate that the outcome of the trial would have been different? Well, so I would say that if that's what the court concludes, then it would be appropriate to remand to the district court to consider that question in the first instance. But the facts here, I think, give my client a very strong claim that there is actual prejudice at the trial level. So let me address that in two ways. The first, which is not the way the state addresses it, looks to what the Faretta right is really about. The state is looking to claims that concern the outcome of trial, but the court in Faretta makes clear that the Faretta right is not ultimately about thinking that self-represented litigants are going to do better at trial. It recognizes that sometimes that'll happen, but most of the time it won't. Instead, the Faretta right is about the fundamental dignity interest in being able to put on your own defense. And so in that sense, there was actual prejudice at Mr. Jones's trial because he wasn't allowed to put on his own defense. But even turning to the outcome of the trial, I think that the record would easily support a finding that there was actual prejudice here. Mr. Jones was accused by a single witness, someone for whom he had sold drugs previously. The witness claimed that he had been robbed at 1 p.m. in the middle of Detroit, forced to strip naked and run down the street, and yet the prosecution presented not a single witness. He claimed that he had been robbed at another time. Mr. Jones had an alibi witness present at trial ready to testify, whom I'm going to turn to. Petitioner claims that the denial for his request for self-representation was contrary to Faretta when the trial court said he couldn't handle it, presumably because based on his lack of technical legal knowledge, contrary to Faretta. But there's absolutely no reference to these factors by the trial court. And finding that would be contrary to the presumption that state courts know and follow the law. State courts on habeas are to be given the benefit of the doubt, and the state has offered what we believe is another plausible inference from the record. And if there's more than one reasonable inference from the record, then on habeas the state should prevail. Petitioner also claims that you can look to circuit precedent. That is true, you can look to circuit precedent, but habeas can't be granted unless the state court's decision is contrary to or in reasonable application of clearly established Supreme Court law. And also the fact that a circuit may say something is clearly established doesn't necessarily make it so. And the Supreme Court has reversed circuits for doing this, most recently in and then the Lopez v. Smith decision. In those cases the Ninth Circuit claimed that their circuit defined what clearly established law was, and that they had faithfully applied clearly established Supreme Court law. The Supreme Court said no, our cases don't stand for that. It's important to look at the actual language and analysis by the Supreme Court. Also, the Supreme Court has said you can't use circuit precedent to refine or sharpen a general principle of the Supreme Court into a specific legal rule that the Supreme Court hasn't announced. And that's in effect what the district court did here by relying on Moore to effectively extend Ferretta in a way that it's never been extended. Regarding actual prejudice, the words of Ambrose are very clear. A petitioner must show actual prejudice to excuse the default. This court may remand, but there's no reason to. For purposes of judicial economy, this court may consider it in the first instance. And also, we may remand. If we were to do that, it would be what? To make a finding on actual prejudice like the court did in Ambrose. But this court doesn't need to do that. It may consider it on its own. And petitioner has never before even alleged actual prejudice, so that argument may also be deemed waived or even abandoned. What do you say in response to Mr. Snyder's claim that the petitioner had an alibi witness there ready to testify at trial? Is there record support for that? There is no record support that he had an alibi witness there ready to testify. And he did raise in the Michigan Court of Appeals an ineffective assistance of trial counsel claim for failing to raise three witnesses, including an alibi with Michigan Court of Appeals. Found that claim without merit because there was no factual support to back it. The court has assertion that there was an alibi or anybody willing to testify on his behalf. I see my time is up. Judges? Thank you, counsel. Mr. Snyder, we appreciate your taking this case under the Criminal Justice Act. It's a service to our system of justice. I know you're not getting the usual Latham and Watkins rates for this. Case will be submitted.